OPINION OF THE COURT
 

 Wesley, J.
 

 In this case we are asked to consider whether the constitutional right to a speedy trial, which is afforded to every defendant in criminal prosecutions in New York State, should be extended to juveniles in delinquency proceedings.
 

 On July 7, 1994 Benjamin L., a 15 year old, was arrested and detained overnight after he allegedly menaced a delivery person and attempted to steal Chinese food from him in Yonkers. The following day the director of the Woodfield Detention Cottage submitted a pre-petition detention application to Family Court pursuant to sections 307.3 and 307.4 of the Family Court Act. At a hearing held on the same day Family Court denied the application, remanded appellant to his mother’s care and ordered him to observe a 10:00 p.m. curfew.
 

 Over one year later, on August 2, 1995, the Westchester County Attorney’s office, acting in its capacity as presentment agency, filed a petition relating to the July 7, 1994 incident. The petition alleged that Benjamin, along with other youths, committed acts which, if committed by an adult, would constitute the crimes of attempted robbery in the second degree and menacing in the third degree. Appellant made an initial appearance with counsel on August 8, 1995 and entered a denial.
 
 *664
 
 The matter was adjourned to September 13, 1995 for a fact-finding hearing. On August 30, 1995, appellant moved to dismiss the petition, challenging its sufficiency and alleging that the delay in filing the petition violated his statutory right to a speedy hearing as codified in Family Court Act §§ 310.2, 320.2 and 340.1, or, in the alternative, his constitutional right to due process pursuant to
 
 People v Singer
 
 (44 NY2d 241).
 

 Family Court denied Benjamin’s motion to dismiss without the benefit of a hearing. Relying on
 
 People v Taranovich
 
 (37 NY2d 442), the court concluded that the delay did not “rise to the level of a speedy trial violation;” the court did not discuss Benjamin’s statutory speedy hearing arguments. At the conclusion of the fact-finding and disposition hearings, Family Court adjudicated appellant a juvenile delinquent and placed him on probation for one year. Appellant raised the same speedy trial/ due process contentions on appeal. The Appellate Division affirmed, also basing its decision on
 
 Taranovich
 
 without reference to the statutory contentions. We granted Benjamin leave to appeal and now reverse and remit the matter to Family Court for further proceedings in accordance with this opinion.
 

 Since its inception the juvenile justice system has employed procedural mechanisms different from those embodied in its adult counterpart. Juvenile proceedings were traditionally viewed as special proceedings that were not subject to the provisions of either the State or Federal Constitution. While adult criminal proceedings were generally regarded as punitive and adversarial, juvenile proceedings were considered rehabilitative and informal in nature (see,
 
 e.g., In re Gault,
 
 387 US 1;
 
 Matter of Randy K.,
 
 77 NY2d 398, 409; Besharov and Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 301.1, at 13-17; Smith and Dabiri,
 
 The Judicial Role in the Treatment of Juvenile Delinquents,
 
 3 JL & Pol’y 347 [1995]; Butts,
 
 Speedy Trial in the Juvenile Court,
 
 23 Am J Crim L 515 [1996]). Thus, due to the distinctive character and goals of juvenile adjudications, juveniles were not accorded the same procedural rights as adults for much of this century.
 

 The landmark Supreme Court decision
 
 In re Gault
 
 fundamentally altered the constitutional parameters of juvenile proceedings. In
 
 Gault
 
 the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires States to observe certain fundamental procedural rights in juvenile
 
 *665
 
 proceedings.
 
 [1]
 
 Although the Court in
 
 Gault
 
 and several earlier decisions extended due process protections to juveniles that were usually only afforded to adults (see,
 
 Haley v Ohio,
 
 332 US 596;
 
 Gallegos v Colorado,
 
 370 US 49;
 
 Kent v United States,
 
 383 US 541), it did not transpose every constitutional protection necessary in a criminal prosecution to juvenile delinquency proceedings. That equivalency might frustrate the special purpose of juvenile proceedings, which differ in significant ways from fheir criminal counterpart
 
 (see, McKeiver v Pennsylvania,
 
 403 US 528;
 
 Kent v United States, supra).
 

 In keeping with the focus established by
 
 Gault,
 
 the Legislature amended the Family Court Act to add specific procedural rights for juveniles
 
 (see, Matter of Frank C.,
 
 70 NY2d 408, 413). The revised procedural rules include specific time limitations in the Family Court Act to govern each stage of the proceeding from arrest through final disposition
 
 (id.).
 
 The express purpose of these provisions is to assure swift and certain adjudication at all phases of the delinquency proceeding (Mem in Support of Assembly Bill A 7974-A, Bill Jacket, L 1982, ch 920, as cited in
 
 Matter of Frank C., supra).
 
 We have recognized that concern in
 
 People ex rel. Guggenheim v Mucci
 
 (32 NY2d 307) and later reiterated it in
 
 Matter of Frank C.
 
 and
 
 Matter of Willie E.
 
 (88 NY2d 205).
 

 Benjamin argues that the Family Court Act prohibits specified delays between the filing of the pre-petition detention application and the commencement of a fact-finding hearing. He contends that a pre-petition detention application should be equated with a petition for the purpose of commencing the statutory speedy hearing clock. Contrary to Benjamin’s contention, it cannot be inferred from the language of article 3 or the procedural structure of juvenile proceedings that a pre-petition detention application can be equated with a petition to bring into play the time limits set forth in article 3.
 

 Family Court Act § 310.1 (1) states that a proceeding to adjudicate a person a juvenile delinquent is originated by the filing of a petition. A pre-petition detention application differs in form, substance and purpose from a petition. A pre-petition detention application is filed by the detention facility (Family
 
 *666
 
 Ct Act §§ 307.3, 307.4), whereas a petition is filed by the presentment agency (Family Ct Act § 311.1 [1]). Under a prepetition detention application, a youth is subject to a quick yet careful determination by Family Court on the detention issue (Family Ct Act §§ 307.3, 307.4). The statute does provide for the
 
 release
 
 of a juvenile, held in custody following the detention hearing, when a petition is not filed within four days of completion of the detention hearing
 
 (see,
 
 Family Ct Act § 307.4 [7]). The statute thus explicitly prescribes a procedural .difference between pre-petition detention and commencement of the proceeding.
 

 Moreover, while the purpose of a pre-petition detention application is primarily to determine whether a youth should be detained prior to the filing of a petition (Family Ct Act § 307.4 [4]), a petition is “a written accusation by an authorized presentment agency” that formally commences the juvenile proceeding (Family Ct Act § 311.1 [1]). Sections 310.2, 320.2 and 340.1 apply to time periods
 
 after the initial petition is filed.
 

 [2]
 

 Thus, the statute clearly mandates that the filing of the petition by the presentment agency signals the commencement of a juvenile proceeding.
 

 Appellant’s reliance on the language and policy of two of our “speedy hearing”
 
 cases
 
 — Matter
 
 of Willie E. (88
 
 NY2d 205, supra) and
 
 Matter of Frank C.
 
 (70 NY2d 408,
 
 supra)
 
 — misses the mark. In both cases a petition was filed; the Court was dealing with a specific statutorily measured time frame for a fact-finding hearing.
 

 Although article 3 of the Family Court Act establishes specific time limitations at each stage of the proceeding, there is no statutory time limitation for the period between filing a
 
 *667
 
 pre-petition detention application and filing a petition itself when the juvenile is not at a detention facility
 
 (see,
 
 Besharov and Sobie, Practice Commentaries, McKinneys Cons Laws of NY, Book 29A, Family Ct Act § 310.2, at 110-111). The statute simply does not offer a remedy for Benjamin
 
 (see, Matter of Jose R.,
 
 83 NY2d 388, 394).
 

 Benjamin also contends that the delay in question violated his State constitutional right to due process. Although New York does not have a constitutional speedy trial provision, we have long held that in criminal prosecutions an unreasonable delay in prosecuting a defendant following an arrest can constitute a violation of the Due Process Clause of our Constitution
 
 (People v Staley,
 
 41 NY2d 789, 791).
 

 The right to a speedy trial is derived from an overarching interest in ensuring that all defendants are treated according to fair and reasonable procedures
 
 (see, Barker v Wingo,
 
 407 US 514, 518). Moreover, there are societal interests in providing a speedy trial that exist separate from the interests of the accused
 
 (id.).
 
 These interests include preventing extensive backlogs of cases that diminish the legitimacy of the proceedings in the eyes of accuseds and their accusers while creating additional pressure on prosecutors to negotiate plea bargains premised on length of delay, not merit. Additionally, long delays may harm the case of the prosecution or the defense because a witness’s memory may fade.
 

 These same concerns are even more compelling in the juvenile context. Minimizing the time between arrest and disposition in juvenile delinquency cases may be especially desirable because of the nature of adolescence (Butts,
 
 Speedy Trial in the Juvenile Court, op. cit.,
 
 at 525). Indeed, a delay in the proceedings may undermine a court’s ability to act in its adjudicative and rehabilitative capacities
 
 (id.).
 
 Legal sanctions in the juvenile setting are designed to teach offenders that unlawful behavior has consequences. As we have already noted, the Legislature long ago acknowledged these concerns by imposing specific time limits at a number of procedural junctures in article 3.
 

 In sum, many of the same policies that warrant the articulation and enforcement of a criminal defendant’s right to a speedy trial are applicable as a matter of fundamental fairness to juveniles in delinquency proceedings
 
 (see, McKeiver v Pennsylvania, supra).
 
 The deterrence afforded by prompt disposition, the potential prejudice to a defense and the personal
 
 *668
 
 disruption created by a criminal charge are present whether the accused is a juvenile or an adult
 
 (United States v Furey,
 
 500 F2d 338 [2d Cir 1974]). In light of the need for swift and certain adjudication at all phases of a delinquency proceeding, we conclude that the speedy trial protections afforded under the Due Process Clause are not for criminal proceedings alone and are not at odds with the goals of juvenile proceedings.
 

 Almost 25 years ago, in
 
 People v Taranovich,
 
 this Court articulated the factors to be examined in balancing the merits of an assertion of a denial of a defendant’s right to a speedy trial in a criminal prosecution. Although
 
 Taranovich
 
 specifically addressed a defendant’s right to a speedy trial in a Sixth Amendment context, we have previously acknowledged that the “due process right to prompt prosecution must be tested on a balancing analysis”
 
 (People v Staley, supra,
 
 at 792, citing
 
 People v Taranovich,
 
 37 NY2d 442, 445-447,
 
 supra).
 
 Accepting these factors as an appropriate template, we conclude that the
 
 Taranovich
 
 test should be adopted to the juvenile delinquency context.
 

 Benjamin argues that
 
 People v Singer
 
 (44 NY2d 241,
 
 supra)
 
 requires dismissal of the petition on speedy trial grounds. He posits that the
 
 Taranovich
 
 weighing procedure is inapplicable in light of the 13-month delay here. In
 
 Taranovich
 
 we reaffirmed our prior case law in this area stating that where the “delay is great enough there need be neither proof nor fact of prejudice to the defendant”
 
 (People v Taranovich, supra,
 
 at 447).
 
 Singer
 
 was such a case; this is not
 
 (see, People v Fuller,
 
 57 NY2d 152, 159, n 8;
 
 see also,
 
 Family Ct Act § 302.2).
 

 In
 
 Taranovich,
 
 we held that several factors should be examined in determining the merits of a speedy trial claim: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay. A Taranovich-like test is appropriate for determining whether a juvenile has been denied the right to a speedy adjudication following an arrest for both Sixth Amendment and State due process analyses
 
 (see, People v Staley, supra).
 

 In applying this test, however, courts must remain acutely cognizant of the goals, character and unique nature of juvenile proceedings. Indeed, given the differences between juvenile and criminal proceedings, a court’s analysis cannot merely
 
 *669
 
 mimic that undertaken in criminal cases. For example, there would likely not be an extended period of pretrial incarceration in the juvenile context, given the strict time limitations promulgated in the Family Court Act for filing a petition when a juvenile is detained (Family Ct Act § 307.4 [7]). Moreover, two of the
 
 Taranovich
 
 factors — prejudice and length of delay— may carry different connotations in the context of juvenile proceedings when compared to adult criminal prosecutions.
 

 In criminal cases, establishing actual prejudice may be a particularly difficult factor to prove in a speedy trial analysis due to the fact that time’s erosion of exculpatory evidence and testimony “ ‘can rarely be shown’ ”
 
 (Doggett v United States,
 
 505 US 647, 655, citing
 
 Barker v Wingo, supra,
 
 at 532). Determining whether the juvenile’s defense is impaired due to a delay may be even more arduous. Typically, a juvenile released by a court with no direction to reappear is unlikely to appreciate the importance of taking affirmative steps toward the ultimate resolution of the case, and is just as unlikely to possess the means and sophistication to do so. Moreover, many youths in juvenile proceedings suffer from educational handicaps and mental health problems, which undermine their capacity to anticipate a future presentment and to appreciate the need to take self-protective measures.
 
 [3]
 
 Courts will have to be particularly mindful of these unique circumstances when assessing whether a speedy trial violation occurred.
 

 In a criminal prosecution the sheer length of a delay is important because it is likely that “all other factors being equal, the greater the delay the more probable it is that the accused will be harmed thereby”
 
 (People v Taranovich, supra,
 
 at 445). The effects of that kind of delay in the juvenile context may be even more profound. A juvenile, experiencing the vicissitudes of childhood and adolescence, is more likely to suffer from a lack of memory than an adult (2 Fitzgerald, Encyclopedia of Adolescence: Memory, at 629 [Lerner, Peterson and Brooks-Gunn editors 1991]). A juvenile is less likely than an adult to preserve his or her memory concerning the incident in question, his or her whereabouts on relevant dates, the identity of potential witnesses, and various other crucial details. Thus, there is an even greater potential for impairment of a juvenile’s defense.
 

 
 *670
 
 Undue delay especially disrupts the rehabilitative process
 
 (People v Singer, supra,
 
 at 254), a key feature of the juvenile system. While in a criminal prosecution the accepted goals of punishment and deterrence are still served even when a defendant is prosecuted long after the crime was committed, the central goal of any juvenile proceeding — rehabilitation of the juvenile through prompt intervention and treatment — can seem trivialized when a presentment agency delays the filing of a petition. A child who is subjected to a long delay before a proceeding is commenced only to have it dismissed after a court determines at a dispositional hearing that supervision, treatment or confinement are not required (Family Ct Act § 352.1 [2]) is poorly served by our justice system. However, a child in need of rehabilitative efforts should not be denied that ameliorative attention merely because of some delay. To cut off the rehabilitation opportunity for a juvenile in the name of due process might defeat or contradict the express goals of article 3 — to “consider the needs and best interests of the respondent as well as the need for protection of the community” (Family Ct Act § 301.1;
 
 see also, Matter of Randy K.,
 
 77 NY2d 398, 408). Thus, when evaluating the length of delay a court must carefully consider the complex and varied realities of juveniles and their problems.
 

 In concluding that juveniles have a right to speedy adjudication, we do not endorse a per se rule regarding speedy trial violations. The factors must be collectively evaluated on a case-by-case basis since “no rigid precepts may be formulated which apply to each and every instance in which it is averred that there has been a deprivation of the speedy trial right”
 
 (People v Taranovich, supra,
 
 at 445;
 
 see also, Barker v Wingo,
 
 407 US 514, 530,
 
 supra).
 

 On the record now before us it is impossible for any court to engage in this balancing process, as one of the factors — the reason for the delay — is unknown. While that factor alone may not be determinative
 
 (People v Taranovich, supra,
 
 at 446), it might be relevant in relation to the other enumerated factors. Although the presentment agency has the burden of establishing the reasons for the delay, its failure to do so on this record should not be conclusive
 
 (see, People v Singer, supra,
 
 at 255).
 

 Thus, Family Court should hold a hearing to explore the reason for the delay and the other considerations we have enumerated here
 
 (see, People v Singer, supra; Matter of Anthony P.,
 
 104 Misc 2d 1024, 1028;
 
 see also, Matter of Patrick G.,
 
 92 Misc 2d 126). We recognize that the passage of time may have
 
 *671
 
 rendered this hearing somewhat stale and perhaps even academic in practical terms for the age and circumstance of Benjamin. However, we are establishing an important procedural precedent and therefore deem the remittal for a hearing necessary to decide this case correctly and to set the proper standard.
 

 Appellant’s remaining arguments are without merit.
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to Family Court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Rosenblatt taking no part.
 

 Order reversed, etc.
 

 [1]
 

 . The Court transposed a number of procedural protections from adult proceedings into the juvenile context, including the right to written notice of the specific charges in advance of the hearing; notification of the right to counsel and to appointed counsel in cases of indigency; the privilege against self-incrimination; and the right to a hearing based on sworn testimony, with the corresponding right of cross-examination
 
 (In re Gault, supra).
 

 [2]
 

 . Family Court Act § 310.2, the “speedy trial” provision of the Family Court Act, states, “After a petition has been filed, or upon the signing of an order of removal pursuant to section 725.05 of the criminal procedure law, the respondent is entitled to a speedy fact-finding hearing.” Family Court Act § 320.2 (1) states in relevant part that “[i]f the respondent is detained, the initial appearance shall be held no later than seventy-two hours after a petition is filed or the next day the court is in session, whichever is sooner. If the respondent is not detained, the initial appearance shall be held as soon as practicable and, absent good cause shown, within ten days after a petition is filed.” Family Court Act § 340.1, which addresses the time of the fact-finding hearing, sets different time periods within which the fact-finding hearing shall be commenced, contingent upon the type of crime committed and whether the juvenile is in detention. The commencement mechanism of these timing provisions is the “conclusion of the initial appearance,” which is defined as “the proceeding on the date the respondent first appears before the court after a petition has been filed” (Family Ct Act § 320.1).
 

 [3]
 

 . The record indicates that a Law Guardian was present at Benjamin’s detention hearing pursuant to the statute (Family Ct Act § 307.4 [2]). Certainly the presence of counsel in the proceeding may significantly alter the juvenile’s appreciation of the proceeding and ability to preserve a defense.