[775 NYS2d 287]

In the Matter of Jᴇʀᴍᴀɪɴᴇ J., a Person Alleged to be a Juvenile Delinquent, Appellant.

First Department, April 20, 2004

## APPEARANCES OF COUNSEL

*George E. Reed, Jr., Law Guardian,* for appellant.

*Michael A. Cardozo, Corporation Counsel,* New York City (*Sharyn Rootenberg* and *Larry A. Sonnenshein* of counsel), for presentment agency.

## OPINION OF THE COURT

SAXE, J.

On this appeal we must consider exactly what is required of a Family Court judge under Family Court Act § 321.3 (1) when allocuting a respondent in a juvenile delinquency proceeding who is admitting to one of the charged acts, in a plea deal that resolves numerous charges under more than one docket number. We conclude that the judge in this matter did everything required by the statute, and therefore affirm.

Appellant Jermaine J., who was 15 years old at the time of the offense, was charged, along with three other youths, with acts which, if committed by an adult, would constitute robbery in the second and third degrees, attempted robbery in the second degree, assault in the second and third degrees, grand larceny in the fourth degree, unlawful imprisonment in the second degree, petit larceny, criminal possession of stolen property in the fifth degree, attempted assault in the third degree, and menacing in the third degree.

Submitted in support of the petition was the affidavit of the victim, Marcel Swaby, who stated that on April 18, 2001, he was

approached by one of the four boys and pulled over to where the other three stood, where one of them threatened, "give me your money or I'll cut you," and then reached into Swaby's pocket and took his money. When Swaby asked for his money back, the boy pushed him, causing him to fall to the ground and twist his wrist. All four boys kicked and punched Swaby in the stomach while he was on the ground. Swaby's wrist was swollen for three days and sore for seven days.

At a court appearance on June 25, 2001, appellant and one corespondent appeared before the court, each with his own lawyer and his mother. Appellant's counsel told the court that his client was willing to admit to the top count, in exchange for the dismissal of a separate accusatory instrument against him on an unrelated charge, and the release of appellant to his mother instead of his being remanded. Appellant's counsel noted that he had explained to Jermaine that he could face 18 months in a juvenile correctional facility.

The court stated as follows:

> "You're entitled to a trial in this matter. At the trial, the Corporation Counsel would be required to prove all the allegations in each count of the petition. You would have an opportunity to confront the witnesses against you and have them cross-examined. You would have an opportunity to testify yourself and to call other defense witnesses and to present other defense proof or you could remain silent and not present any proof. The burden would remain on the Corporation Counsel's office. No adverse inference would be taken against you as a result of your failure to testify. Knowing this, you both wish to admit to Count 1, a C felony in each petition, robbery in the second degree, penal law section 160.10 subdivision 1. This covers two other cases that have been filed which were previously mentioned. . . . Those cases will be withdrawn but remain unsealed. Both of you will be paroled after your plea. I will order a probation report, a mental health study and an exploration of placement; but for the fact that A.T.D. is filled up, I'd be sending you there. Instead, I'm going to be sending you to summer school."

After discussion with their lawyers, particularly concerning appellant's request to be permitted to work rather than attend summer school, and after setting a curfew for the two juveniles, the court continued:

"As a result of your plea here, there's a likelihood or a good possibility that you could be placed for up to 18 months and the placement period could be extended after that until your 18th birthday. It's also possible you could receive probation, a conditional discharge or possibly a dismissal of the cases. It all depends on what I read in the reports and what your behavior is in the future. Do both of you understand what I've said."

Both juveniles, and their parents, indicated that they understood what he had said, by saying "Yes."

The court then proceeded to allocute the juveniles as follows:

"Both of you wish to admit to robbery in the second degree, penal law 160.10 subdivision 1. You both wish to admit that in the county of Bronx on or about April 18th, 2001 aided by another person actually present, you forcibly stole property, to [w]it personal property from one Marcel Swaby. Is that correct . . . ?"

Both juveniles answered "Yes."

■ Appellant now challenges the sufficiency of his allocution under Family Court Act § 321.3 (1), which provides that:

"The court shall not consent to the entry of an admission unless it has advised the respondent of his right to a fact-finding hearing. The court shall also ascertain through allocution of the respondent and his parent . . . that (a) he committed the act or acts to which he is entering an admission, (b) he is voluntarily waiving his right to a fact-finding hearing, and (c) he is aware of the possible specific dispositional orders. The provisions of this subdivision shall not be waived."

Appellant asserts that the Family Court failed to (1) elicit specific factual statements from him as to the offense to ensure that he committed the acts for which the admission was being accepted; (2) separate the process of advising him of his trial rights from the process of ascertaining that he understood those rights and was voluntarily waiving them; and (3) properly ensure that he understood the possible consequences of his admission.

He relies upon *Matter of Myacutta A.* (75 AD2d 774, 775 [1980]), in which this Court reversed a dispositional order issued after a fact-finding hearing. However, that appeal focused

on a combination of *several* serious errors. First, there was no showing of compliance with the requirement of Family Court Act § 741 (a) that a "reasonable and substantial effort" be made to notify the juvenile's parent before the commencement of the fact-finding hearing, particularly since the hearing was being held the day after the incident, and since in response to the question of whether the girl's parents were called, the law guardian merely said, "They tried but could not be reached." (75 AD2d at 774.) Second, the court's appointment of a court officer as the respondent's guardian ad litem, to act in loco parentis, was improper. Third, the court failed to ascertain that the 15-year-old girl, in court without any parent or other familiar person, just one day after the incident, understood the nature of the charges or the consequences of the admission when she provided one-word affirmative answers to its questions. Also, importantly, "[t]he Law Guardian's statement that he advised appellant of the 'ramifications' of her plea . . . [did] not shed any light on the subject, as the record does not show what he told her" (75 AD2d at 775).

The only similarity between *Myacutta A.* and the present case is that appellant here also gave one-word answers in the course of his allocution. Here, appellant's parent was present, enough time elapsed to ensure that counsel's representation of him was not rushed, and counsel represented on the record what he told appellant as to the possible ramifications of the plea.

This Court's remark in *Myacutta A.* that "[n]o attempt . . . was made . . . to explain the charge in nonlegal terms" (*id.*) should not be read to require in all circumstances some sort of restatement of the charge without any use of legal terms. There may well be cases in which the elements of the charge are of a nature which ought to be broken down in simple terms. For example, where a juvenile is charged with an act of arson under Penal Law § 150.01, the court must ensure that the youth understands that the crime to which he is admitting involves not only setting a fire, but *intentionally* damaging property by *intentionally* starting the fire. Or, if a juvenile were to be charged with an act which would be burglary in the second degree if committed by an adult, under Penal Law § 140.25 (2), it would be necessary for the court to ascertain that the juvenile was aware of every element of the crime, so that a plea would involve admitting that he had (1) *knowingly* (2) *entered or remained unlawfully* in a (3) *dwelling* (4) with the *intent* to commit a crime therein.

But, other crimes are clearly understood from the simple rec-
itation of the charge, particularly when used in conjunction
with the facts of the supporting affidavit. The crime of robbery
in the second degree (Penal Law § 160.10 [1]) is such a crime.
Its elements, when stated in open court as part of an allocution,
establish in a clear and concise fashion what it is that the re-
spondent has done wrong. Specifically, appellant was asked if he
admitted: "that in the county of Bronx on or about April 18th,
2001 aided by another person actually present, you forcibly
stole property, to [w]it personal property from one Marcel
Swaby." He answered "Yes." There was no uncertainty as to
precisely what he was charged with, and what he was admitting
to: the conduct of appellant and the other youths, acting
together, using force to take personal property from Marcel
Swaby. The use of the term "personal property," although not a
term used in everyday English, was clearly understandable in
this context. There is no basis upon which to conclude that ap-
pellant could have been unsure of exactly what he was charged
with or admitting.

Family Court Act § 321.3 (1) also requires that the record
reflect that the juvenile understood the possible consequences
of the plea. In *Myacutta A.*, there was no basis upon which the
reviewing Court could conclude, based upon the record, that the
juvenile understood this. Here, in contrast, both counsel and
the court explained the possible consequences on the record;
moreover, appellant's counsel had had adequate time to review
and discuss these possibilities with the juvenile and with his
mother.

Appellant also relies upon *Matter of John R.* (71 AD2d 896
[1979]) to argue that reversal is required. There, the Second
Department reversed because, inter alia, the Family Court

> "did not elicit any factual statements from appel-
> lant that he . . . had intentionally started the fire
> in the garage as charged in the delinquency peti-
> tion. It should also be noted that appellant was
> charged with acting in concert with another youth
> in setting fire to the subject garage. However, in
> taking the plea the Judge not only failed to ascertain
> from appellant relevant facts as to the nature of the
> offense, but also did not have him divulge the role
> he played in its commission. . . . Similarly, the
> Judge who accepted appellant's guilty plea to the
> charge of unlawful possession of a weapon . . . did

not elicit from the appellant sufficient factual information to sustain such charge. Specifically, no description of the knife was elicited nor was any factual statement made by appellant, consistent with the allegations contained in the petition, that he used the knife in a menacing fashion and threatened to stab the petitioner with it." (*Id.* at 897.)

This apparent requirement that the Court "elicit" from a respondent specific facts sufficient to sustain the charge has been repeated by the Second Department in subsequent cases (*see e.g. Matter of Schlena P.*, 98 AD2d 750 [1983]; *Matter of Randy H.*, 91 AD2d 685 [1982]). However, Family Court Act § 321.3 (1) does not include any requirement that the court, in conducting a plea allocution with a juvenile, must elicit from the juvenile a full factual recitation of the misconduct, no Court of Appeals cases contain any such requirement, and I suggest that it is inappropriate and excessive to read the Family Court Act as imposing one.

To the extent *Matter of John R.* (71 AD2d 896 [1979]) asserts that a factual allocution, irrespective of who is reciting the facts, must set out sufficient facts to support every element of the crime, it was not violated by the allocution here. In *John R.*, the petition alleged that the respondent, acting in concert with another youth, had engaged in acts amounting to criminal mischief in the fourth degree (Penal Law § 145.00), by intentionally starting a fire in a garage, yet the allocution failed to ascertain that the respondent had acted either intentionally or with another. Here, in contrast, the admission that appellant, aided by another person actually present, forcibly stole personal property from Marcel Swaby, was a clear and complete description of the act, and established all the elements of the charge.

■ Nor does appellant's speedy appeal argument warrant reversal. Although the appellate process must afford due process, "[d]elays do not automatically mandate dismissals; rather, particularly in a postconviction proceeding, it is necessary that the defendant show that he has been prejudiced by the delay" (*see People v Cousart*, 58 NY2d 62, 68 [1982]). And, although a delay that would not be prejudicial in an adult appeal might be prejudicial in a juvenile appeal, there is no "per se rule regarding speedy trial violations" (*see Matter of Benjamin L.*, 92 NY2d 660, 670 [1999]).

The factors considered on a speedy appeal claim are similar to those of a constitutional speedy trial claim, and include the

extent of the delay, the reason for the delay, the nature of the underlying charge, and whether or not there is any indication that the defense has been impaired by reason of the delay (*Benjamin L.*, 92 NY2d at 668; *Cousart*, 58 NY2d at 68). While the delay here was unusually long, appellant has not established prejudice based upon a deprivation of his liberty. He does not argue that the term of his placement was excessive. In fact, given the negative reports about him in the file and the fact that, subsequent to the two dockets disposed of by his plea, he threatened yet another person with a knife, the six-month extension of his placement was clearly justified.

Accordingly, the order of disposition of the Family Court, Bronx County (Harold J. Lynch, J.), entered on or about September 21, 2001, which adjudicated appellant a juvenile delinquent, upon his admission that he committed acts which, if committed by an adult, would constitute the crime of robbery in the second degree, and placed him in a limited secure facility for a period of 18 months, should be affirmed, without costs.

TOM, J.P., ANDRIAS, ELLERIN and MARLOW, JJ., concur.

Order of disposition, Family Court, Bronx County, entered on or about September 21, 2001, affirmed, without costs.